UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
CYNTHIA J. NEVELS,
aka Cynthia J. Elvrum,
    Debtor.
                        No. 13-07-11513 SA

**MEMORANDUM OPINION ON ATTORNEY SCHUCHARDT'S
OBJECTION TO CHAPTER 13 TRUSTEE'S
<u>FINAL ACCOUNT AND PETITION FOR FINAL DECREE</u>**

This matter came before the Court on the Standing Chapter 13 Trustee's Final Account of Trustee and Petition for Final Decree (doc 74), and the Objection to Chapter 13 Trustee's Final Accounting ("Objection") (doc 75) filed by Elliott Schuchardt, the Debtor's former counsel (sometimes "Counsel"). For the reasons set forth below, the Court finds that the Objection is not well taken and should be overruled.[1]

**Background**

Debtor Cynthia Nevels filed a Chapter 13 petition and plan through Counsel on June 26, 2007. The Statement of Financial Affairs disclosed a $50,000 transfer to Debtor's son some four months before the bankruptcy to cover his college expenses. Ms. Nevel's largest creditor by far was her ex-husband Ronald Nevels, whose claim ultimately turned out to be a little under $50,000.

---

[1] The Court has jurisdiction of the subject matter and of the persons herein pursuant to 28 U.S.C. §§ 1334 and 157(a); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and these are findings of fact and conclusions of as may be required by F.R.B.P. 7052. The Court is making this decision based on the presentations of the parties, a procedure agreed to by the parties at the hearing conducted by the Court on November 18, 2008.

Mr. Nevels was the only non-priority, non-administrative unsecured creditor to receive a distribution.

The plan called for monthly payments of $300 for 36 months. The confirmation order (doc 28)[2], entered March 4, 2008, ordered Debtor to make these payments and also provided for the turnover to the estate of the $50,000. Since the $50,000 had been deposited in a certificate of deposit with New Mexico Educators Federal Credit Union and had been held pending entry of the confirmation order, those funds were delivered to the Trustee shortly after the entry of the confirmation order.

On February 21, 2008, Counsel withdrew from representing Debtor and attorney William R. Brummett substituted in, doc 27, although Counsel had signed off on the confirmation order. Following confirmation, Counsel filed an application for approval of attorney fees of $5,527.58 and costs of $297.23 (doc 38), which Debtor contested. Ultimately the Court granted the application in the full amount of $5,824.81, having found that Counsel represented Debtor well at a very reasonable cost. Doc 65. Taking into account Debtor's prepetition payment of $776 and

---

[2] Due to the poor visual quality of the order that was entered, the Court subsequently "refiled" the text of the order so that it is readable. Doc 36.

the Trustee's initial (and only) post petition payment to Counsel of $1,524, Counsel is still owed $3,524.81.[3]

On August 19, 2008, the Trustee filed a Motion to Dismiss for failure to make plan payments in the amount of $1200, doc 68, which the Court granted on October 3, 2008. Doc 70. Trustee filed the Final Account of Trustee and Petition of [sic - should be "for"?] Final Decree ("Final Account") on October 23, 2008, which drew Counsel's objection.

In the meantime, the events which led to this dispute occurred. Plan section III(b) discusses the treatment of Debtor's attorney's fees as an administrative claim:

> Debtor's Attorney's Fees. The debtor's attorney's fees shall be paid as follows: (a) counsel for the debtor anticipates total attorney's fees in an amount of at least $2,300 including gross receipts tax, and not including the filing fee ("Pre-Application Fees"); (b) counsel for the debtor shall be permitted to apply a pre-petition retainer (the "Retainer") for fees and costs received by counsel in the amount of $776 (not including the filing fee) to the Pre-Application Fees; (c) upon confirmation, to the extent such funds exist and are available for this purpose, the trustee shall distribute the difference between the Pre-Application Fees and the Retainer to counsel for the debtor pending the filing and allowance of a fee application; (d) within fifteen (15) days after confirmation of the plan, counsel for the debtor shall file a fee application for all services rendered and costs incurred up to and including confirmation; (e) any fees requested in addition to the Pre-Application Fees shall only be paid by the trustee after approval by the Court; and (f) in the event that the fees approved by

---

[3] Counsel asserts that the amount he is still owed is $3,100.81. Objection, ¶12, at 3. Given the Court's approval of the Final Account, the difference is irrelevant.

> the Court are less than the Pre-Application Fees paid
> to counsel by the debtor, trustee or otherwise, then
> counsel for the debtor shall refund to the trustee the
> difference between the Pre-Application Fees and the
> amount awarded. If debtor's attorney fails to file its
> fee application within fifteen (15) days after entry of
> an order confirming this plan (or within such
> additional time as the Court may allow upon motion for
> extension filed within said time), counsel shall refund
> to the trustee the Pre-Application Fees and funds
> distributed by the trustee, and the trustee shall be
> entitled to an order requiring such turnover. Nothing
> herein shall preclude counsel from filing a fee
> application after the time allowed hereunder, and being
> paid pursuant to this paragraph upon entry of an order
> allowing such fees, but counsel's entitlement to
> payment at the time of the first distribution of funds
> from the trustee after confirmation of this plan shall
> depend on the timely filing of the initial fee
> application.

The confirmation order repeated in decretal paragraph 3 the substance of the first sentence of the above-quoted plan provision.

The Final Report states that the case was dismissed after confirmation, and accounted for total receipts of $54,575.72, no administrative payments, a priority payment of $1,524.00[4], no secured payments, $49,231.42 unsecured payments, and $3,820.30 in Trustee fees, for total disbursements of $54,575.72. Counsel received from the estate only the $1,524.00 which, combined with the $776 that Counsel received from Debtor prepetition, totaled the $2,300 figure in the plan and confirmation order.

---

[4] In fact, the $1,524.00 was the payment to Counsel, and therefore the Final Account is in error when it categorizes this payment as Priority rather than Administrative. The error is harmless.

Page -4-

The deadline for filing the fee application was March 19, 2008. It got filed on April 22. On March 31, almost two weeks after the application was due, Counsel e-mailed the Trustee asking her for an extension of time because he would be out of the country until mid-April. However, Counsel did not, as some other counsel do, file a motion asking for an extension of time to file the application, which he could have done at any time before he left the country or indeed even before confirmation.

Counsel and Trustee agree that Counsel told Trustee on March 31 that the application was going to be filed, and they both agree that Trustee agreed that she would not seek disgorgement of any of his fees pursuant to the plan and confirmation order prior to April 30, 2008.[5] Counsel understood Trustee's commitment not to seek disgorgement until April 30 as an agreement, de facto or explicit, to allow him up to April 30 to file a fee application and to withhold distribution, or withhold sufficient funds from the distribution, until then. Trustee understood no such thing, but merely that she would not file a disgorgement motion against Counsel.

---

[5] To be clear, the disgorgement discussed in the presentations to the Court referred only to potential disgorgement by Counsel of unapproved fees ($2,300). There was never any suggestion to the Court that Trustee agreed to pursue disgorgement from the single unsecured creditor or that the Trustee agreed to disgorge any of her commissions.

Page -5-

The standard chapter 13 procedure in this District is that upon the filing of a fee application, Trustee reserves from distribution sufficient funds to cover the maximum amount requested by the application (to the extent of the funds available), and holds the funds until a ruling on the fee application. Trustee then pays according to the court order on the next disbursement date. In this instance, Trustee made s small disbursement in late March (including the $1,524) and then disbursed the bulk of the funds on April 22, the same day the fee application was filed.[6] Thus, she did not have on file nor, as explained below, was she, practically speaking, on notice on that day (April 22) that she should reserve any amount for Counsel's fee application. And since as it turned out Debtor had made her last monthly payment to Trustee almost a month earlier, on March 28, there turned out to be no funds to be reserved for payment of Counsel's fees.

**Analysis**

Counsel objects to the Final Report 1) as violative of the "absolute priority rule" [sic] of 11 U.S.C. § 507(a)(2); 2) as violative of the Trustee's fiduciary duties; 3) as violative of the rule that administrative expenses should be paid pro rata. He seeks to hold the Trustee personally responsible for the

---

[6] Trustee disburses plan payments on a monthly basis. There is no suggestion that Trustee did not disburse according to her normal monthly disbursement schedule.

alleged mispayments, or alternatively to require her to seek disgorgement from the unsecured creditor who received the bulk of the distributions, and seeks punitive damages.

ABSOLUTE PRIORITY RULE

The "absolute priority rule" is a term of art in chapter 11 bankruptcies. It is of no relevance to Chapter 13 administrative expenses.

> [T]he absolute priority rule "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." [Ahlers v. Norwest Bank Worthington]794 F.2d [388], at 401 [(8th Cir. 1986)]. The rule had its genesis in judicial construction of the undefined requirement of the early bankruptcy statute that reorganization plans be "fair and equitable." See Northern Pacific R. Co. v. Boyd, 228 U.S. 482, 504-505, 33 S.Ct. 554, 560, 57 L.Ed. 931 (1913); Louisville Trust Co. v. Louisville, N.A. & C.R. Co., 174 U.S. 674, 684, 19 S.Ct. 827, 830, 43 L.Ed. 1130 (1899). The rule has since gained express statutory force, and was incorporated into Chapter 11 of the Bankruptcy Code adopted in 1978. See 11 U.S.C. § 1129(b)(2)(B)(ii) (1982 ed., Supp. IV). Under current law, no Chapter 11 reorganization plan can be confirmed over the creditors' legitimate objections (absent certain conditions not relevant here) if it fails to comply with the absolute priority rule.

Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 202 (1988).

Counsel appears to argue that administrative expenses must be paid in full before lower priority (i.e., non-priority unsecured) claims may be paid. However, this is not the rule in Chapter 13. First, Section 1322(b)(4) states that a plan may provide for payments on any unsecured claim to be made

concurrently with payments on any secured claim or any other unsecured claim. Administrative claims are unsecured, so this suggests that administrative claims can be paid at the same time as priority or secured claims. This concept is reinforced by Section 1326(b) which provides, in relevant part:

> (b) Before or at the time of each payment to creditors under the plan, there shall be paid--
> (1) any unpaid claim of the kind specified in section 507(a)(2) of this title; [and]
> (2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28....

This section states that, at the time of <u>each individual payment</u>, the Trustee should first pay both 507(a)(2) claims (<u>i.e.</u>, administrative expense claims allowed under § 503(b) including attorneys fees) and the standing trustee's commission. This suggests that if there are no unpaid 507(a)(2) claims at the time of an individual distribution, the Trustee, by statute, takes her fees and pays the balance of the funds according to the plan. There is no language that the Trustee is to reserve funds for future payment of unfiled 507(a)(2) expenses[7]. There is no requirement that all approved 507(a)(2) claims and all future but yet unapproved 507(a)(2) claims be paid in full before any payments to non-priority unsecured creditors could be made

---

[7] In contrast, 11 U.S.C. § 1326(a)(2) requires that if a plan is confirmed, the Trustee "shall" distribute the preconfirmation payments in accordance with the plan "as soon as is practicable."

Page -8-

according to the plan.  If this were the case, a trustee could only disburse after many if not all payments by the debtor were received and all administrative expenses were finally approved;[8] in other words, the trustee might be able to make only one payment: the last one.  In short, there is no priority of payment rule in Chapter 13 of the sort that Counsel suggests.  Compare 11 U.S.C. 726(a) (In Chapter 7 cases, trustee must distribute to Section 507 claims "in the order specified in section 507".)  There is no parallel statute in Chapter 13.  Alabama v. Brown (In re Brown), 2008 WL 205578 at *3 (M.D. Ala. 2008).  See also 3 Keith M. Lundin, Chapter 13 Bankruptcy §204.2 n.29 (3rd Ed. 2007)("The order of distribution of property in 11 U.S.C. § 726(a) does not apply in a Chapter 13 case.")

TRUSTEE'S FIDUCIARY DUTIES

One reason for the deadline to file a fee application is to assure that the Trustee is on notice of what amounts are claimed and are authorized by the Court (through an order approving a fee application) to pay the fees.  But the Court will not impose the duty on the Chapter 13 Trustee to ensure that fee applications are filed before distributions are made.  The Code requires a trustee to distribute as soon as practicable.  The plan explicitly spells out the consequences of not filing a fee

---

[8] In the course of a chapter 13 case there may well be two or more fee applications, depending on the length of the case and how well a debtor is progressing through the case.

application within a very short period of time: the debtor's attorney forfeits the right to share in the initial distributions. That is especially true in this case, where Debtor's attorney knew from the confirmation Order that a $50,000 certificate of deposit was likely to be distributed early in the case. Debtor's attorney cannot blame the Trustee for his own failure to file a timely fee application. Furthermore, the Trustee was expecting years more of payments from which the attorney fees could have been paid. The Trustee had no control over the fact that Debtor stopped making payments and was dismissed before the attorneys fees were paid.

PRO RATA ADMINISTRATIVE EXPENSES

Counsel argues that it is inequitable and a violation of the absolute priority rule [sic] that the Trustee has received all of her Chapter 13 commissions from the estate yet he has received none. As discussed above, there is no priority rule for payment of administrative expenses in a chapter 13 as there is in a chapter 7 case. It may be unfair that Mr. Schuchardt did not get paid, but it is purely a timing issue. Debtor elected to stop making payments before the attorneys fees were paid. "Given Chapter 13's voluntary nature, an unsecured creditor must accept the risk that a case will not be commenced in the first place or that it will never complete." In re Baines, 263 B.R. 868, 873 (Bankr. S.D. Ill. 2001).

**Conclusion**

The Trustee has done nothing wrong and is not liable to Mr. Schuchardt for any of his attorney fees.[9] Punitive damages are not appropriate. Explicitly, the Court finds no basis whatever to conclude that Trustee was "gaming" the system, intending to cheat Counsel, or engaging in any unethical conduct in any manner, in this case or any other case.

The Trustee shall submit an Order approving the Trustee's Final Account and overruling Mr. Schuchardt's objection.

_/s/ James S. Starzynski_
Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: October 9, 2009

Copies to:

Elliott J. Schuchardt
Schuchardt Law Firm
9111 Cross Park Drive
Suite D-200
Knoxville, TN 37923

William R Brummett
113 6th St NW Ste E
Albuquerque, NM 87102-3103

Kelley L. Skehen
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

---

[9] Because of the disposition of this matter, the Court need not consider In re Vigil, Case No. 07-10413-s13 (Bankr. D.N.M.) (see docs 61, 68 and 69, in which funds paid to a secured creditor were returned to the estate to pay Counsel's fees in that case).